UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KIDANEMARIAM KASSA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CIVIL ACTION FILE NO.<br>)<br>) 1:17-CV-02068-AT |
| FULTON COUNTY, GEORGIA,<br>PAUL H. HOWARD, officially &<br>individually,<br>ANTIONETTE STEPHENSON,<br>individually,<br>PIERRE EASLEY, individually, and<br>JOHN DOE, officially & individually, | )<br>)<br>)<br>)<br>) JURY TRIAL REQUESTED<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF'S RESPONSE TO SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS FULTON COUNTY, GEORGIA, DISTRICT ATTORNEY PAUL HOWARD, ASSISTANT DISTRICT ATTORNEY ANTOINETTE STEPHENSON, INVESTIGATOR PIERRE EASLEY AND JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1) and 12(b)(6)**

COMES NOW PLAINTIFF KIDANEMARIAM KASSA ("Plaintiff") and

by and through his undersigned counsel of record and files this PLAINTIFF'S

RESPONSE TO SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS

FULTON COUNTY, GEORGIA, DISTRICT ATTORNEY PAUL HOWARD,

ASSISTANT DISTRICT ATTORNEY ANTOINETTE STEPHENSON,

1

INVESTIGATOR PIERRE EASLEY AND JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1) and 12(b)(6).

## Introduction

Plaintiff, Kidanemariam Kassa submits his responses to the questions and issues posed to him in this Court's September 28, 2018 Order [Doc. 33] and responds to Defendants' arguments in their Supplemental Brief by providing the following:

**I.  No legal authority supports Defendants' assertion that Hon. John Goger was the only person who could recall the material witness warrant.**

Defendants were asked by this Court:

> What legal authority supports the Defendants' contention that although Defendant Stephenson "sought and successfully obtained the [material witness] warrant, *only the Judge who issued the warrant could recall or cancel it*"? {Defs.' Br., Doc. 27-1 at 19; *see also* 27-1 at 21) (emphasis added.) If Defendants cannot point to any such authority, do they agree that their assertion is one based on their view of the facts?

Defendants' response cited O.C.G.A. § 15-1-13 but relied on the role of internal policy in determining how officers of the court routinely cause warrants to be cancelled or recalled. [Document 34 at 3-4]. In pointing to office policy through the sworn affidavit of Karen Nelson, however Defendants' fail to justify their position. Moreover, Defendants' response establishes that their argument is one of fact and not of law.

2

> **A. Defendants Stephenson and Easley failed to follow their own office protocol by failing to request warrant cancellation in writing to a judicial officer. They could therefore have not formed a reasonable expectation that the warrant would be cancelled and therefore any argument regarding Judge Goger being the only authority able to cancel the warrant is irrelevant.**

According to Ms. Nelson, the routine practice in Fulton County procedure to cancel a warrant requires either (1) the Sheriff's Office receiving a warrant cancellation notice prepared by a court officer and signed by a judge or (2) a court order. Both methods require a judge's signature *and* a request from a court officer. Neither method provides for oral submissions by the Fulton County D.A.'s Office regardless of varying procedures "involv[ing] a prosecutor making an oral motion to the sheriff's office" Defendants use to support their own actions. [Doc. 34-1 ¶2, 3]

> **B. Defendants provide no legal authority supporting oral motions being sufficient to cause the cancellation of a warrant in Fulton County and do not assert that an oral motion was made to any judicial officer for the cancellation of the warrant against Plaintiff.**

Curiously, despite the procedure described in Ms. Nelson's affidavit, Defendants argue that their alleged actions were adequate and that providing a written request to a judge is outside of their responsibility. [Doc. 34 at 10]. By their own measure, Defendants' alleged oral request to the Fulton County Sheriff to cancel Plaintiff's warrant was inadequate and could not reasonably be expected to result in the cancellation of a warrant (as the policy in Fulton County requires, according to Affiant Nelson, the signature of a judge at the request of an officer of the court).

Defendants also point to a 1980's practice employed by the Richmond County Solicitor General's office during the 1980's to justify the use of oral motions to cancel warrants. State v. Stringer, 258 Ga. 605, 372 S.E. 2d 426 (1988). Not only is the practice in Stringer not one described as being effective in Fulton County, it was implemented in a completely different technological age in which conventions such as e-filing was impossible.

Defendant Stephenson immediately provided Judge Shoob with a written order cancelling Plaintiff's material witness warrant upon learning that he had been wrongfully arrested. She neither petitioned the court orally nor orally requested that the Fulton County Sheriff correct the error. This suggests that the procedure laid out by affiant Nelson is in fact what the Defendants knew to be necessary to

properly cancel or recall an invalid warrant and that they had no reasonable expectation that the warrant for Mr. Kassa would in fact be cancelled.

## II. Judge Goger did not preside over the criminal trial at issue and was not solely authorized to order the cancellation of the warrant against Plaintiff.

As provided by Defendants, Atlanta Judicial Circuit Judge Wendy L. Shoob presided over the trial against Plaintiff's assailant in Fulton County Superior Court. The claim that "only the *issuing* judge" may recall the warrant is unsupported by law and Defendants' own averments in Ms. Nelson's affidavit regarding standard practices in Fulton County. Defendants cite to statutes identified in an unpublished 1985 Georgia Attorney General Opinion identifying statutes[1] which would cause an issuing judge to review and recall or cancel a material witness warrant. 1985 Op. Atty Gen. Ga. 193, No. U85-27, 1985 WL 68941, at *1 (June 21, 1985). The Opinion concludes "[an] arrest warrant may be dismissed by the issuing judicial officer at the request of the prosecutor prior to its execution and need not be dismissed by the court having jurisdiction over the trial of the case."[2] Id at *2. The AG's opinion only broadens the number of judicial officers that would have been available to consider a proper written request for warrant cancellation from Defendants, either in

---

[1] OCGA §§ 17-4-40 and 15-1-3.
[2] Id.

5

the form of a warrant cancellation notice or motion. There is no support for the proposition that Judge Goger was the only judicial officer with the authority to order the cancellation.

Defendants' assertions conflate the statutory and legal *authority* to order a warrant cancellation with an *obligation* to do so. Notably, Defendant Stephenson's Application for Arrest of Material Witness ("Exhibit A") cites as authority OCGA § 17-4-42, which explains that a superior court Judge may issue a warrant within his jurisdiction that is returnable only to him.[3] Here, Judge Goger's Order contains no language restricting the cancellation of the warrant in any way, though the court does order the Fulton County Jail to notify Judge Goger of Plaintiff's arrest so that a bond hearing can be scheduled. Accordingly, any superior court judge or specially appointed superior court judge would have been authorized to authorize or order the cancellation of the material witness warrant at issue.

### III. Withers v. Schroder - - S. E. 2d - - does not impact Plaintiff's analysis of Defendants' immunity claims.

The Georgia Supreme Court's recent *Withers* opinion, --- S.E.2d ---, 2018 WL 4288425 addressed the issue whether defendants were entitled to judicial and

---

[3] OCGA § 17-4-42 provides, "[n]o judicial officer except a judge of the superior court shall issue a special warrant for arrest returnable only before himself; nor shall any superior court judge issue such warrant outside of his own judicial circuit. If issued outside the judicial circuit, the warrant shall be treated as a general arrest warrant."

6

quasi-judicial immunity where court staff falsely informed the Georgia Department of Driver Services ("DDS") that the Plaintiff had failed to appear in court, which resulted in the revocation of his driver's license and arrest. Id. at *1. All communications from the Recorder's Court to DDS regarding case dispositions were pursuant to statutory authority granted to the trial court by OCGA § 17-6-11 to "immediately forward to [DDS] . . . the license number if the person fails to appear and answer to the charge against him or her. . ."

The more refined issue in Withers was whether function of transmitting an erroneous traffic court disposition to DDS was administrative or judicial in nature. Job title alone is insufficient entitle a state actor to absolute immunity. The Withers analysis centered evaluating the conduct complained of instead of the identity of the actor on the basis that "judicial immunity is justified and defined by the *functions* it protects and serves, not the by the person to whom it attaches." (citing Forrester v. White, 484 U.S. at 227, (1988)) (emphasis in original). Certain core functions, like the preparation of documents, by court administrators who operate as "'extension[s] of the court' or 'arm[s] of the judge'" make the administrator "immune from suit based on quasi-judicial immunity. Withers at *4. The Withers Court explained that Recorder's Court inaccurate documentation of the disposition of the Plaintiff's case was protected conduct because it was "part and parcel" of the judicial process, explaining that "courts have held that *the act of reporting* a matter

pending before a court to an interested government agency is a function that is judicial in nature and inherent to the judicial process." Id. (citing Herring v. Gorbey, 2017 WL 5885668 (C) (3) (E.D. Pa. November 27, 2017)) (emphasis added).

### A. Defendants Stephenson and Easley's conduct occurred outside of the judicial phase of litigation.

The instant case is distinguishable from Withers for several reasons. First, Defendants Stephenson and Easley's administrative failure to apply for the cancellation of the material witness warrant occurred well beyond the conclusion of the judicial phase of litigation. This is unlike the Withers judge and staff who were performing judicial functions that were intimately related to the disposition of a traffic case, during and immediately following the Plaintiff's court appearance as a defendant.

Though the timing of a prosecutor's actions is not dispositive as to whether he was acting as an advocate, it is an important factor to consider because the analysis of whether a prosecutor is entitled to absolute immunity is a subjective, fact-specific inquiry. See e.g. Yarris v. County of Delaware, 465 F.3d 129, 134 (3d Cir.2006) (rejecting bright-line rules that would treat the timing of the prosecutor's action . . or its location. . .as dispositive.) Defendants' failure to properly request the cancellation of the material witness warrant was unrelated to the disposition of

the criminal trial as the trial had ended. Their omission is not analogous to the judicial and quasi-judicial errant transmission of information to DDS in <u>Withers</u> because it was not at all related to the prosecution of Plaintiff's assailant.

### B. Defendants Stephenson and Easley were not performing any statutorily mandated duty.

Second, this case can be distinguished from <u>Withers</u> because Defendants Stephenson and Easley were not performing a duty related to any statutory mandate that they request and fail to cancel a material witness warrant. The court staff in <u>Withers</u> was found to have been performing a task related to a duty statutorily assigned to the judge by statute, and as such the staff was effectively acting as an arm of the court. Such conduct is protected by quasi-judicial immunity because of its nature. <u>Id.</u> at *3. Here, Defendants Easley and Stephenson were acting (and failing to act) independently from judicial responsibilities and in connection with their role as investigators for the criminal trial.

The standard procedure for cancelling warrants described by Affiant Nelson requires prosecutors to seek judicial approval for the *action* of cancelling an arrest warrant, and not judicial clearance for the *inaction* of leaving an invalid warrant in place. Thus, even using their own witness' affidavit, the procedures Defendants neglected to perform related to the cancellation of the warrant are set out in

9

administrative policies observed by the Fulton County District Attorney and Sheriff's office as a matter of routine practice (and not Georgia law). [Doc. 34-1].

Defendants mistakenly suggest that the force of OCGA § 17-4-40 is analogous[4] to that of OCGA § 17-6-11 in Withers. In Withers, the judicial responsibility for reporting case dispositions to DDS was statutorily certain. The statute at the time "made it clear that *the court* was obligated to report to DDS the status of a traffic case pending before it, including any final adjudication." Id. at *3. Therefore, in Withers, the court's preparation of the report to DDS was "part and parcel of the judicial process" necessary to fully resolve traffic offenses pending in the court. Id.  In contrast, OCGA § 17-4-40 has no bearing on whether Defendants were *required* to seek and fail to apply for the cancellation of the material witness warrant.  OCGA § 17-4-40 discusses only the authority of courts to make findings of probable cause related to ordering the arrests of persons suspected of crimes. Here, Plaintiff was suspected of no crime and instead was sought as a third-party witness in the trial of his alleged assailant.  Further, Defendant Stephenson's application for Plaintiff's arrest does not cite OCGA § 17-4-40 as authority and instead points to OCGA §§ 15-1-3(4), 17-4-42, 17-7-25 and 17-7-26, all of which specifically address judicial authority to compel witnesses

---

[4] Defendants cite to OCGA § 17-4-40 for the proposition that Defendants Stephenson and Easley were acting pursuant to a statutory duty as was the judge and court staff in Withers.

and court control proceedings. As a result, OCGA § 17-4-40 is irrelevant as it relates to the impact of Withers here.

### C. Defendants Stephenson and Easley were not acting as advocates or judicial actors.

Third, Defendant Stephenson's actions related to the application for and failure to cancel the material witness warrant were performed as co-investigator to Defendant Easley and not as an advocate or judicial actor. Like the prosecutor in Kalina and unlike the court clerk in Withers, Defendant Stephenson wrote and submitted an application (attached hereto as "Exhibit A") to the court attesting to the difficulty Defendant Easley allegedly encountered when attempting to serve Plaintiff with a subpoena for trial without being under any statutory responsibility to do so. The language of Judge Goger's order issued in response to that application (attached hereto as "Exhibit B") was also prepared by Defendant Stephenson and notes only the court reading[5] the application before ruling. Defendant Stephenson's Application for Arrest of Material Witness is similar to the certification in Kalina,

---

[5] It is unclear without discovery whether Defendant Easley testified before Judge Goger or whether Judge Goger's order issued solely based on the contents of Defendant Stephenson's application. The Order for the Arrest of Material Witness prepared by Defendant Stephenson provides only that Judge Goger read the application before ruling, which was also prepared by her: "[t]he application by the State for the Arrest of a Material Witness having been read and considered, it is therefore ORDERED that the person of Kidaemariam Kassa. . .be arrested and incarcerated in the Fulton County Jail as a Material Witness in the above styled case. . ."

where the prosecutor prepared a "Certification for Determination of Probable Cause" containing two inaccurate factual statements to secure a charge against a criminal defendant.  Id. at 121-122.  In the absence of sworn testimony to Judge Goger, Defendant Stephenson's application would have served as the sole grounds for the issuance of the warrant, which are typically supplied to judicial officers by law enforcement authorities in affidavits.  Again, if Withers is instructive here, is it only to the extent that it affirms that proper absolute immunity analysis requires an inquiry of the nature of the function performed by, and not merely the job title of, the Defendant.

Defendants also assert that because Defendant Easley acted at the direction of Defendant Stephenson providing the court with information to determine whether to issue a material witness warrant, he is entitled to qualified immunity. Even the instruction from Defendant Stephenson to Defendant Easley in this context fails to justify any attendant absolute immunity for Defendant Easley because Defendant Stephenson's instruction was made pursuant to her role as investigator and not as advocate.  Instruction from of a prosecuting attorney to staff that is not advocative in nature is not entitled to absolute immunity, which means that the staff member is also precluded from raising an immunity defense.

## D. Withers did not address administrative functions as they relate to third-party actors in litigation.

Fourth, Withers has no bearing on the question of whether failing to properly request in writing the cancellation of a material witness warrant is a ministerial task. Defendants' argument that "Plaintiff has not proven that a statute or policy exists that established a simple, absolute and definite duty for ADA Stephenson or Investigator Easley to timey cancel or recall the material witness warrant" suggests that a prosecutor and her investigator may leave an invalid warrant in place indefinitely because no statute or policy establishes a mandate that they promptly take action to request its cancellation. That supposition ignores the clearly established law as provided in the Constitutions of the United States of America and Georgia, both of which protect individuals from unreasonable search and seizure. This constitutional protection is not limited to potential criminal defendants but also extends also to third-party witnesses. Moreover, Plaintiff was over arrested three months after the conclusion of the criminal trial, negating any suggesting that unreasonable promptness is at issue.

Defendants, also again ignore the *simple protocol* detailed in Ms. Nelson's affidavit requiring a request to a judge in writing for a warrant to be cancelled or

13

recalled.[6]  See Odd v. Malone, 538 F.3d 202, 214 (3d Cir. 2008) (finding that prosecutors "failed to perform a fundamentally administrative task [of] notifying. . . judges that [Plaintiffs] remained incarcerated for 48-58 days after it was clear that their testimony would not be needed for quite some time, if ever and when a county policy required prosecutors to notify the court of the length of detention of material witnesses.").  The matter of Plaintiff's wrongful arrest was not brought before Judge Shoob until his family successfully retained an attorney to represent him *and* he had been hospitalized due to a cardiac episode at the Fulton County Jail.  This was the failure of Defendants Stephenson, Easley and Fulton County.

**IV.    Plaintiff requests leave to amend his Complaint and resolve issues related to a potential defendant employed by the Fulton County Sheriff's Department and/or Jail at the time of relevant events giving rise to this action.**

Plaintiff argues alternative liability for his wrongful arrest and prolonged detention based on the claims of Defendants Howard, Stephenson and Easley that they properly requested the cancellation of the material witness warrant by orally requesting that the Fulton County Sheriff's office recall it.  If an oral request was sufficient and was made to an employee of the Sheriff's Department, the ministerial failure would fall to that office.  Additionally, employees of the Jail or Sheriff

---

[6] Judge Goger's March 15, 2015 Order for Arrest of Material Witness also provided that the court was to be "immediately" notified of Plaintiff's arrest for the purpose of setting a hearing on the matter of an appearance bond.

14

responsible for disobeying Judge Goger's order to promptly notify him of Plaintiff's arrest are responsible for the length of Plaintiff's detention. There is, however, no information presently available to Plaintiff establishing the identity of the Sheriff or Jail employee(s) potentially responsible. Thus, Plaintiff could not name those persons as defendants in this action. The Court has kindly advised Plaintiff that the use of fictitious party pleading is not appropriate in district court but the Court is "amenable to a party's moving to add a party in the event an identification problem exists that can best be cured by discovery." [Doc. 33 at 3]. The Court further authorized Plaintiff to attach to this memorandum a proposed Amended Complaint, in the event Plaintiff wishes formally to request leave to amend his Complaint so as to address the issues raised by this Order.

Accordingly, Plaintiff attaches his Proposed Second Amended Complaint hereto as "Exhibit C" and requests formal leave from the Court to file a Second Amended Complaint to address issues raised by the Court's Order dated September 28, 2018.

## V. Conclusion

For the foregoing reasons, Plaintiff requests that: (1) arguments contained in his November 24, 2017 response Defendants' Motion to Dismiss be fully incorporated herein; (2) Defendants' motion be DENIED; and (3) Plaintiff be granted leave to add parties whose identities may be revealed through the discovery process as authorized by law.

Respectfully submitted this 26th day of October, 2018.

**/S/TIFFANY WILLIAMS ROBERTS**
**Tiffany Williams Roberts**
Bar No. 791208
235 Peachtree Street, Suite 400
Atlanta, Georgia 30303
(404) 287-2090 – telephone
(678) 965-1790 –facsimile
troberts@tiffanywroberts.com

CERTIFICATION

Counsel for Plaintiff certifies that the foregoing document complies with the font and point size requirements of Local Rule 5.1 (C).

**/S/TIFFANY WILLIAMS ROBERTS**
**Tiffany Williams Roberts**
Bar No. 791208
191 Peachtree Street, Suite 3300
Atlanta, Georgia 30303
(404) 287-2090 (t); (678) 965-1790 (f)
troberts@tiffanywroberts.com

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **KIDANEMARIAM KASSA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE NO.** |
| vs. ) | |
| ) | **1:17-CV-02068-AT** |
| **FULTON COUNTY, GEORGIA,** ) | |
| **PAUL H. HOWARD, officially &** ) | |
| **individually,** ) | |
| **ANTIONETTE STEPHENSON,** ) | |
| **individually,** ) | **JURY TRIAL REQUESTED** |
| **PIERRE EASLEY, individually, and** ) | |
| **JOHN DOE, officially & individually,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 26, 2018, I have electronically filed the foregoing PLAINTIFF'S RESPONSE TO SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS FULTON COUNTY, GEORGIA, DISTRICT ATTORNEY PAUL HOWARD, ASSISTANT DISTRICT ATTORNEY ANTOINETTE STEPHENSON, INVESTIGATOR PIERRE EASLEY AND JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1) and 12(b)(6) with the Clerk of Court using the CM/ECF system which will provide electronic notification to the following attorney of record:

17

**Ashley J. Palmer**
**OFFICE OF THE FULTON COUNTY ATTORNEY**
**141 Pryor Street, S.W., Suite 4038**
**Atlanta, Georgia 30303**
**(404) 612-0246 (office); (404) 730-6324 (facsimile)**

This the 26th day of October, 2018.

/S/TIFFANY WILLIAMS ROBERTS
**Tiffany Williams Roberts**
Bar No. 791208
235 Peachtree Street, Suite 400
Atlanta, Georgia 30303
(404) 287-2090 – telephone
(678) 965-1790 –facsimile
troberts@tiffanywroberts.com