```
          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF GEORGIA
                   ATLANTA DIVISION
```

```
KIDANEMARIAM KASSA,             )
                                )
      Plaintiff,                )
                                )       CIVIL RIGHTS COMPLAINT
v.                              )       42 U.S.C. § 1983
                                )
                                )       CIVIL ACTION NO.
                                )       1:17-CV-02068-SDG
FULTON COUNTY, GEORGIA,         )
PAUL H. HOWARD, officially &    )
Individually,                   )
ANTIONETTE STEPHENSON,          )
individually, PIERRE EASLEY,    )
individually, and JOHN DOE,     )
officially & individually,      )
                                )
      Defendants.               )
_____)
```

**BRIEF IN SUPPORT OF INVESTIGATOR PIERRE EASLEY'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Investigator Pierre Easley, by and through undersigned counsel, and files this Brief in support of his Motion for Summary Judgment, and shows this Honorable Court as follows:

**FACTUAL BACKGROUND**

On March 17, 2014, at approximately 8 am in the morning, Plaintiff was working as a taxi driver. (Kassa v Easley FC000003; Kassa Dep. 19:16-25). Plaintiff was called to a hotel to pick up a customer for transport in his taxi, and the individual robbed Plaintiff at gunpoint and then ran off.

(Kassa Dep. 19:22-21:2). Plaintiff's attacker was subsequently indicted. (Kassa v Easley FC000002-FC000004). A year later, as the Fulton County District Attorney's Office ("DA's Office" or "the State") was preparing to try Plaintiff's attacker, both Inv. Easley and Assistant District Attorney Antoinette Stephenson ("ADA Stephenson") contacted Plaintiff on numerous occasions. (Kassa Dep. 29:16-22 and 31:25-32:5). However, Plaintiff informed Inv. Easley that he would not appear at trial, at which time, Inv. Easley advised Plaintiff that if he did not come to court, he would take him to jail. (Kassa Dep. 27:15-32:5).

Despite Inv. Easley's numerous phone calls with Plaintiff, he was never able to interview him about the facts of his criminal case. (Easley Dep. 28:3-5 and 29:22-30:14). Accordingly, on March 17, 2015, Inv. Easley attempted to contact Plaintiff by phone, and he then went to Plaintiff's home to attempt to finally conduct an interview and serve a subpoena for Plaintiff's appearance at trial. (Kassa v Easley FC000051-FC000052 and FC000098; Easley Dep. 53:4-9). Before leaving his office, Inv. Easley used Securus[1] to ping the Plaintiff's

---

[1] Securus allows an individual to plug a number into its system, and the system pings the phone of the person to whom the number belongs, and also provides the inquiring individual with the

2

cellular telephone, and it showed Inv. Easley that Plaintiff was in the vicinity of Plaintiff's listed address. (Kassa v Easley FC000051-FC000052; Easley Dep. 53:4-9). Although Inv. Easley did not make contact with Plaintiff on March 17, 2015, he spoke with Plaintiff's apartment manager and verified that Plaintiff's address at Bethel Towers Apartments was correct and that he was the only one on the lease. Id. The apartment manager also verified that the phone number that Inv. Easley had for Plaintiff was correct.[2] Id. Further, Inv. Easley confirmed that the aforementioned phone number was the only one that the apartment complex had on file for Plaintiff. Id.

When Inv. Easley knocked on Plaintiff's door, and announced who he was, someone inside told him to leave. Id.; (Easley Dep. 61:19-62:6). Although Plaintiff has testified that he was not at home when Inv. Easley visited his home on March 17, 2015 (see Kassa Dep. 41:1-4), he does acknowledge that two of his adult children live with him. (Kassa Dep. 14:12-24). Inv. Easley left a copy of the subpoena and his business card at the residence. (Kassa v Easley FC000051-FC000052). Plaintiff

---

general area where the owner of the phone is currently located. (Easley Dep. 38:4-14).

[2] Plaintiff also subsequently verified this fact during his deposition. (Kassa Dep. 29:9-15).

acknowledges that the subpoena was left in his door, and that he received it. (Kassa Dep. 40:18-41:4). On March 18, 2015, Inv. Easley attempted to contact Plaintiff by phone again, and he returned to Plaintiff's home in another attempt to serve him. (Kassa v Easley FC000051-FC000052 and FC000098). Inv. Easley heard movement inside of Plaintiff's apartment, but no one would come to the door. Id. In addition, the subpoena and business card that Inv. Easley left the day prior were also gone. Id.

Based upon Plaintiff's statements that he would not come to court, his refusal to allow Inv. Easley to even interview him, and his failure to contact Inv. Easley even after Inv. Easley had visited Plaintiff's home, and served Plaintiff with a subpoena, it became clear to the DA's Office that that Plaintiff was willfully avoiding subpoena service. (Easley Dep. 59:10-60:19). ADA Stephenson filed an Application for Arrest of Material Witness with the Court and obtained a material witness warrant from Judge John Goger. (Kassa v Easley FC000051-FC000053). And even after the material witness warrant was obtained, Inv. Easley continued to attempt to make contact with Plaintiff. (Kassa Dep. 28:7-29:8; Kassa v Easley FC000098).

On March 23, 2015, Plaintiff appeared at trial and testified against his attacker. (Kassa Dep. 43:24-45:15). And

4

after Plaintiff testified, although it was not his responsibility to do so, Inv. Easley took steps to have the warrant recalled. (Easley Dep. 75:17-77:6). On or about June 7, 2015, Plaintiff was involved in a motor vehicle accident. (Kassa Dep. 45:16-25; Kassa v Easley FC000078). Despite Inv. Easley requesting that the warrant be recalled, it had not been recalled, and the Atlanta Police Department Officer who investigated the accident arrested Plaintiff on the material witness warrant. (Kassa Dep. 46:6-47:1; Kassa v Easley FC000078). On June 12, 2015, Judge Wendy Shoob cancelled the warrant and released Plaintiff from custody. (Kassa v Easley FC000079).

## **STANDARD OF REVIEW**

Summary judgment is authorized when "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Miller v. Conway, 2013 WL 1729405, at *2 (N.D. Ga. Mar. 28, 2013), citing Burger King Corp v. E-Z Eating, 572 F.3d 1306, 1313 (11th Circuit 2009)). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Id. The movant is not

5

required to negate its opponent's claims, but may discharge its burden merely by "showing the court that there is an absence of evidence to support the non-moving party's case." Id. "Genuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987); see also Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."); Shuler v. Bd. of Trustees of Univ. of Alabama, 480 F. App'x 540, 544 (11th Cir. 2012).

When the movant's burden is met, the non-moving party must then "go beyond the pleadings" and offer evidence designating "specific facts showing there is a genuine issue for trial." Id. Unsupported factual allegations and/or speculation are legally insufficient to defeat a summary judgment motion. Id. In regards to qualified immunity, "[the non-movant] can [only] avoid summary judgment by demonstrating either that [the movant]

6

is not entitled to qualified immunity as a matter of law or by showing the presence of a genuine issue of material fact upon which one of those questions of law must turn." Rich v. Dollar, 841 F.2d 1558, 1562 (11th Cir. 1988), citing Fed. R. Civ. Proc. 56(e) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## ARGUMENT AND CITATION TO AUTHORITY

**I. As to Count I, Inv. Easley should be granted summary judgment in his individual capacity because Inv. Easley enjoys qualified immunity for the claims brought against him.**

    **A. The elements required to prove Plaintiff's assertions as alleged in Count I**

       *1. Malicious Prosecution/Illegal Seizure*

In Count I of his Complaint, Plaintiff alleges a denial of his due process, malicious prosecution and illegal seizure.

> To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused....
>
> As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim.

7

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010) (internal quotations and citations omitted).

### *2. Substantive Due Process*

"The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' without the due process of law. Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). The Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). A violation of either of these two kinds of protection may form the basis for a suit under § 1983. Id." Maddox v. Stephens, 727 F.3d 1109, 1118 (11th Cir. 2013). "[S]ubstantive due process rights are created only by the Constitution." Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J., concurring).

> Not every wrong committed by a state actor rises to the level of a 'constitutional tort,' sufficient to trigger a substantive due process violation," Lee v. Hutson, 810 F.2d 1030, 1032 (11th Cir. 1987), as "the Constitution does not protect against all encroachments by the state onto the interests of individuals," Robertson v. Hecksel, 420 F.3d 1254, 1262 (11th Cir. 2005). The Supreme Court has "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties

> that are analogous to those traditionally imposed by state tort law," Collins v. City of Harker Heights, Tex., 503 U.S. 115, 128, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992), and it is clear that "[m]ere negligence does not rise to the level of a Fourteenth Amendment violation," Bendiburg v. Dempsey, 909 F.2d 463, 470 (11th Cir. 1990); see also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003) ("We know for certain...that a showing of negligence is insufficient to make out a constitutional due process claim."). Instead, plaintiffs face a high bar when attempting to establish a substantive due process violation as "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Waddell, 329 F.3d at 1305. Even intentional wrongs seldom violate the Due Process Clause, id., and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,' " Cnty. of Sacramento, 523 U.S. at 846, 118 S.Ct. at 1716 (quoting Collins, 503 U.S. at 129, 112 S.Ct. at 1071). "Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor must be egregious—that is, shock the conscience—at the time the government actor made the decision." Waddell, 329 F.3d at 1305. Conduct intended to injure in some way that is unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level, id., and we must conduct an "exact analysis of circumstances before any abuse of power is condemned as conscience shocking," Cnty. of Sacramento, 523 U.S. at 850, 118 S.Ct. at 1718–19.

Maddox, 727 F.3d at 1120-21.

   **B. Inv. Easley's entitlement to Qualified Immunity**

9

Qualified immunity shields governmental officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." Rehberg v. Paulk, 611 F.3d 828, 838 (11th Cir. 2010), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officals from harassment, distraction, and liability when they perform their duties unreasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). A party is eligible to claim qualified immunity if he was acting within the line and scope of his employment. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2009) (citations omitted).

In considering whether an act is discretionary, the courts consider whether the action at issue was "influenced by the decisionmaker's experiences, values, and emotions." Harlow, 457 U.S. at 816. In contrast, ministerial acts are those that do not require the exercise of independent thought or deliberation by the person taking the action. Kitchen v. CSX Transp., Inc., 6 F.3d 727, 732 (11th Cir. 1993). Generally, immunity is only

available to officials performing discretionary functions. Harlow, 457 U.S. at 816.

The Eleventh Circuit has gone further than the U.S. Supreme Court by providing a concrete standard for determining whether an action is discretionary or ministerial for purposes of applying the doctrine of qualified immunity. Vinson v. Clarke County, Ala., 10 F. Supp. 2d 1282, 1296 (SD Ala., June 17, 1998). Qualified immunity is available to a government official—even if his actions appear to be ministerial in nature— so long as the official's actions "'(1) were undertaken pursuant to the performance of his duties,' and '(2) were within the scope of his authority.'" Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994), quoting Rich, 841 F.2d at 1564. If the conduct at issue falls within this definition, then it is established that the official was acting within the scope of his discretionary authority. Vinson, 10 F. Supp. 2d 1282 at 1297, citing McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995).

To evaluate claims of qualified immunity as applied to discretionary conduct, the Court considers whether: 1) Plaintiff has alleged a violation of a constitutional right; and 2) whether the right was "clearly established" at the time of Defendant's alleged misconduct. Rehberg, 611 F.3d at 838-39.

This two-pronged analysis may be done in whatever order is deemed most appropriate for the case. Id., citing Pearson v. Callahan, 555 U.S. 223 (2009). Thus, a government agent is entitled to immunity unless his discretionary act is "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." Id. at 838, quoting Lassiter v. Ala. A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994).

Here, there is no dispute that Inv. Easley's alleged actions were performed within the scope of his employment with the DA's Office. Thus, Inv. Easley exercised his discretionary authority when determining how he would carry out his duties. Inv. Easley attempted to contact Plaintiff by phone multiple times in order to convince him to come into the DA's Office for an interview. (Kassa Dep. 29:16-22 and 31:25-32:5). He attempted to meet with Plaintiff on numerous occasions. (Easley Dep. 33:11-25 and 100:11-101:7). And when these efforts failed, and Plaintiff advised Inv. Easley that he simply was not coming to Court (Kassa Dep. 27:15-32:5), Inv. Easley visited Plaintiff's home on two separate occasions and served him with a subpoena, which Plaintiff acknowledges that he received. (Kassa Dep. 40:18-41:4.) The subpoena is the sole reason that

Plaintiff finally relented and agreed to testify. (Kassa Dep. 23:5-23).

Despite Plaintiff's allegations to the contrary, Inv. Easley did not knowingly violate his Fourth and Fourteenth Amendment rights because Inv. Easley did not fabricate evidence regarding Plaintiff's avoidance of subpoena service. Nor did Inv. Easley give false testimony to that effect when the DA's Office sought to obtain the material witness warrant that ultimately resulted in Plaintiff's arrest. Plaintiff advised Inv. Easley by phone that he was fearful of his safety, and as a result, he did not want to come to court. (Kassa Dep. 27:15-32:5). Despite Inv. Easley's repeated attempts to speak with him (Kassa Dep. 29:16-22 and 31:25-32:5), Plaintiff was wholly uncooperative. (Easley Dep. 100:11-101:7).

Even if this Court viewed Plaintiff's arrest as "a criminal prosecution," it was not instituted with malice and without probable cause, as the above-described evidence demonstrates. By all accounts, Inv. Easley acted appropriately in providing testimony elicited by the DA's Office in seeking to secure Plaintiff's appearance at trial. Notably, Plaintiff's attacker committed another violent act while out on bond. (Kassa Dep. 39:19-40:6). This was an individual that the State was

13

desperate to get off the street. (Easley Dep. 31:1-32:4). If Inv. Easley felt any malice, it was towards Plaintiff's attacker, not Plaintiff. Only when Plaintiff failed to assist Inv. Easley did Inv. Easley utilize his discretionary authority, providing the assigned Assistant District Attorney with evidence-based facts of his inability to secure Plaintiff's appearance at trial, coupled with her own failed efforts, so that she could secure a material witness warrant.[3]

As for any suggestion of Inv. Easley violating Plaintiff's Fourteenth Amendment substantive due process rights, nothing about his conduct "can be characterized as arbitrary or conscience shocking." Waddell, 329 F.3d at 1305. Inv. Easley sought to get justice for the numerous victims that Plaintiff's attacker had terrorized. (Easley Dep. 31:1-32:4). After consulting with ADA Stephenson, it was decided that the State would seek a material witness warrant because they needed "to get [Plaintiff] into court." (Easley Dep. 48:9-49:6). Inv.

---

[3] Since the first prong of malicious prosecution cannot be satisfied, the second prong—an unreasonable or illegal seizure—cannot be reached. Further, in this instance, Inv. Easley did not arrest Plaintiff, and, in fact, the record reflects that he attempted to recall the material witness warrant immediately following Plaintiff's testimony at his attacker's trial, even though there is no evidence that Inv. Easley was responsible for doing so. (Easley Dep. 76:6-77:6).

Easley believed that justice demanded it. In addition, the State obtaining material witness warrants was not uncommon, mooting any argument that this act was arbitrary or conscience shocking. (Easley Dep. 85:4-11). Further, even if Inv. Easley was negligent in providing assistance to obtain the material witness warrant, this "does not rise to the level of a Fourteenth Amendment violation," Bendiburg, 909 F.2d at 470. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Cnty. of Sacramento, 523 U.S. at 849. Accordingly, Inv. Easley is entitled to qualified immunity, and the charge against him should be dismissed.[4]

## CONCLUSION

Inv. Easley provided Judge Goger with actual cause—not fabricated cause—for a warrant to be issued. Thus, Plaintiff has no claim against Inv. Easley. Plaintiff asserts that Inv. Easley lied and fabricated evidence, but the record evidence proves otherwise. Further, there is no clearly established law that required Inv. Easley to conduct himself in any other way than he did. All of the acts that Inv. Easley engaged in were

---

[4] Count I is the only count that remains against Inv. Easley (see Doc. 37), and if this Court grants Inv. Easley's motion for summary judgment, then Count III would then become moot, since Plaintiff would have no entitlement to Attorney's Fees.

discretionary acts that he undertook pursuant to the performance of his duties and within the scope of his authority. <u>See</u> <u>Jordan</u>, 38 F.3d at 1566. Accordingly, Defendant is entitled to qualified immunity. For the foregoing reasons, Inv. Pierre Easley's Motion for Summary Judgment should be GRANTED.

Respectfully submitted, this 12th day of December, 2019.

**OFFICE OF THE FULTON COUNTY ATTORNEY**

Patrise Perkins-Hooker
COUNTY ATTORNEY
Georgia Bar No. 572358

Kaye W. Burwell
Deputy County Attorney
Georgia Bar No. 775060

***/s/ Ashley J. Palmer***
Ashley J. Palmer
Senior Assistant County Attorney
Georgia Bar No. 603514

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)

```
          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION
```

KIDANEMARIAM KASSA,            )
                               )
     Plaintiff,                )
                               )      CIVIL RIGHTS COMPLAINT
v.                             )      42 U.S.C. § 1983
                               )
                               )      CIVIL ACTION NO.
                               )      1:17-CV-02068-SDG
FULTON COUNTY, GEORGIA,        )
PAUL H. HOWARD, officially &   )
Individually,                  )
ANTIONETTE STEPHENSON,         )
individually, PIERRE EASLEY,   )
individually, and JOHN DOE,    )
officially & individually,     )
                               )
     Defendants.               )
_____)

## CERTIFICATE OF SERVICE

THIS CERTIFIES that on December 12, 2019, I presented this document in Courier New, 12 point type, and that I have electronically filed the foregoing **BRIEF IN SUPPORT OF INVESTIGATOR PIERRE EASLEY'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, and will provide mail notification to the following attorney of record:

```
              Tiffany Williams Roberts
           Tiffany W. Roberts, Attorney at Law
                      Suite 400
                235 Peachtree Street
                Atlanta, Georgia 30303
              troberts@tiffanywroberts.com
```

17

Jeffrey R. Filipovits
Filipovits Law Firm, P.C.
2900 Chamblee-Tucker Rd., Bldg. 1
Atlanta, Georgia 30341
jrfilipovits@gmail.com

This 12th day of December, 2019.

/s/ *Ashley J. Palmer*
Ashley J. Palmer
Senior Assistant County Attorney
Georgia Bar No. 603514

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)